IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02907-KLM

HEATHER MARIE CARR,

      Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

      Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record** [#9],[2] filed January 30, 2014, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for supplemental security income benefits pursuant to 20 C.F.R. § 416 ("Title XVI") of the Social Security Act, 42 U.S.C. §§ 401-433 (the "Act").  On April 9, 2014, Plaintiff filed an Opening Brief [#12] (the "Brief").  On May 7, 2014, Defendant filed a Response  [#13] (the "Response").  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).  The Court has reviewed the entire case file and the applicable law and is sufficiently advised

_____

[1]  The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See generally Consent Form* [#19].

[2]  "[#9]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

in the premises.  For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

### I.  Factual and Procedural Background

Plaintiff alleges that she became disabled on December 19, 2011.[3]  Tr. 9.[4]  On May 23, 2012, Plaintiff filed for Title XVI supplemental security income.  Tr. 98-105.  On May 24, 2013, a hearing was held before Administrative Law Judge Paul R. Armstrong (the "ALJ").  Tr. 24-60.  On June 8, 2013, the ALJ entered his Decision, finding that Plaintiff was "not disabled under section 1614(a)(3)(A) of the Social Security Act."  Tr. 23.  Plaintiff appealed to the Appeals Council, which denied her request for review of the ALJ's decision.  Tr. 1-5.  Therefore, the ALJ's decision became a final decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 416.1481.

Born on August 3, 1972, Plaintiff was 39 years old when she filed her application for supplemental security income.  Tr. 22, 117.  The ALJ determined that, Plaintiff "worked after the application date but this work activity did not rise to the level of substantial gainful activity."  Tr. 12.  The ALJ further found that Plaintiff "has at least a high school education and is able to communicate in English."  Tr. 22.  The ALJ determined that "[t]ransferability of job skills is not material to the determination of disability . . . ."  Tr. 22.  Regarding Plaintiff's alleged disabilities, the ALJ found that she "has the following severe impairments: Affective disorder; Personality disorder; Scoliosis; and Torticollis [ ]."  Tr. 12.  However, the

---

[3]  Plaintiff initially alleged that she became disabled on March 1, 2009.  Tr. 117.

[4]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 9-1, 9-2, 9-3, 9-4, 9-5, 9-6, and 9-7, by the sequential transcript numbers instead of the separate docket numbers.

ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." Tr. 12. After reviewing the information in the record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC")

> to perform light[5] work as defined in 20 CFR 416.967(b) except no public contact work. The claimant, moreover, is incapable of performing work[ ] requiring more than superficial contact with supervisors and co-employees.

Tr. 14. Based on the RFC and the testimony of Lee O. Knutson (the "VE"), an impartial vocational expert, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform . . . ." Tr. 19. Specifically, based on the testimony of the VE, the ALJ concluded that Plaintiff could perform the representative occupations of maid, cleaner/housekeeper, non-postal service mail sorter or mail-room clerk, and machine tender. Tr. 23. He therefore found Plaintiff not disabled at step five of the sequential evaluation. Tr. 23.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A),

---

[5] Light jobs involve lifting no more than 20 pounds occasionally and 10 pounds frequently, standing and walking 6 of 8 hours, and sitting 2 of 8 hours. (Footnote in original).

1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).  The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.  42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision of the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)).  In other words, the Court does not reexamine the issues *de*

4

*novo.  Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993).

Thus, even when some evidence could support contrary findings, the Court "may not

displace the agency's choice between two fairly conflicting views," even if the Court may

have "made a different choice had the matter been before it *de novo.*"  *Oldham v. Astrue*,

509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.    Legal Standard

The Social Security Administration uses a five-step framework to determine whether

a claimant meets the necessary conditions to receive Social Security benefits.  *See* 20

C.F.R. § 416.920.  The claimant bears the burden of proof at steps one through four, and

if the claimant fails at any of these steps, consideration of any subsequent steps is

unnecessary.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination

can be made at any of the steps that a claimant is or is not disabled, evaluation under a

subsequent step is not necessary.").  The Commissioner bears the burden of proof at step

five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged

in substantial gainful activity."  *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d

1140, 1142 (10th Cir. 2004)).  If not, the ALJ considers at step two, whether a claimant has

"a medically severe impairment or impairments."  *Id.*  "An impairment is severe under the

applicable regulations if it significantly limits a claimant's physical or mental ability to

perform basic work activities."  *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521).  Next,

at step three, the ALJ considers whether a claimant's medically severe impairments are

equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the

"Listings."  *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's

impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

## B.   Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  Analysis

Plaintiff requests judicial review of the ALJ's decision denying her supplemental

social security income benefits.  *Brief* [#12] at 1.  Plaintiff brings three main challenges to the ALJ's findings, with multiple arguments offered in support of each challenge.  First, Plaintiff argues that the "ALJ's analysis of [Plaintiff's] treating therapist's opinion that she has significant mental limitations greater than those found by the ALJ is inconsistent with Agency policy and the law of this circuit . . . ."  *Id.* at 1, 6-13.  Second, Plaintiff maintains that the "ALJ's assignment of little weight to [Plaintiff's] mental health case specialist is not supported by substantial evidence where, as here, the underlying evidence simply does not support the assertions made by the ALJ with respect to the supposed 'overestimation' of her limitations by her therapist."  *Id.* at 1, 14-30.  As part of this second argument, Plaintiff also challenges the ALJ's assignment of "significant weight" to the opinion of the state agency nonexamining consultant.  *Id.* at 3, 27-30.  Finally, Plaintiff argues that "the ALJ's mental RFC only addresses her social limitations" even though the ALJ found that Plaintiff has "significant limitations of her ability to concentrate, persist at tasks, and maintain pace . . . ."  *Id.* at 22-26.  The Court will address each of these arguments in turn.

## A.     The ALJ's Consideration of Ms. Etter's Opinion

Plaintiff argues that the ALJ erred by not including all of the limitations Plaintiff's treating therapist found Plaintiff suffered from when the ALJ determined Plaintiff's RFC.  *Brief* [#12] at 6.  Specifically, Plaintiff maintains that Valerie Etter's, LCSW (""Etter"), May 21, 2013 opinion that Plaintiff has "extreme" limitations in certain work-related areas of functioning and "marked" limitations in other work-related areas of functioning is supported by the evidence.  *Id.* at 7-8.  She further argues that "the ALJ's failure to account for the additional limitations proven in the assessment of [Plaintiff's] treating mental health source is clear error, requiring remand."  *Id.* at 8.

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ and the Commissioner. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005); *White v. Barnhart*, 287 F.3d 903, 905, 908, 909 (10th Cir. 2001). However, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (explaining that the Court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)).

In this case, the ALJ provided a very thorough analysis of the evidence he considered when determining Plaintiff's RFC. Tr. 14-22. The ALJ discussed the medical records; Plaintiff's testimony; the testimony of Plaintiff's friend, Robert Fowler ("Fowler"); Ms. Etter's opinion; the opinion of the psychologist employed by the state agency, Dr. Gayle Frommelt, Ph. D ("Frommelt"); and the opinion of the Single Decision-Maker ("SDM") employed by the state agency, Shari Gerson, to consider Plaintiff's physical complaints. Tr. 14-22.

Specifically, with regard to Ms. Etter's May 21, 2013 opinion, the ALJ explained:

In determining the claimant's [RFC], the undersigned considered the medical source statement of Valerie Etter, a Licensed Clinical Social Worker (LSCW), who counseled the claimant at Colorado West Mental Health. Based on multiple therapy sessions, Ms. Etter concluded that the claimant's ability to understand, remember, and carry out instructions (simple and detailed) are "extreme," indicating a severe impairment with no useful ability to function in this area. To support her conclusions, Ms. Etter reported that the claimant has a "panic disorder presentation in which when she is challenged, her mind shuts down and she is consumed with emotions often leading to anger

8

outbursts."  In addition, Ms. Etter concluded that the claimant's ability to respond appropriately to supervision, co-workers and work pressures were "marked" to "extreme."  To support her conclusions, Ms. Etter reported that [ ] due to the claimant's panic disorder and chronic Torticolis, the claimant lacks the capacity to remain calm and centered under stress.  Moreover, Ms. Etter concluded that due to abandonment and emotional neglect, the claimant lacks the social skills to interact effectively with co-workers and supervisors consistently [ ].

The undersigned, however, afforded these conclusions little weight because they overestimate the extent to which the claimant suffers limitations.  For example, as mentioned earlier, the claimant's records and hearing testimony reflect that the claimant attended IntelliTec college and has [a] certificate in medical coding.  On mental status examination, the claimant's memory was found to be "normal" [ ].  In terms of the social interaction, although the claimant reported that [s]he has problems getting along with others, there is no evidence of mental health problems on the claimant's work performance that ha[ve] led to emotional instability or difficulty developing and maintaining appropriate co-worker relationships.  For example, the record reflects the claimant reported that while working at [a] previous job at a gastroenterology clinic, she was "never angry."  She reported that at the gastroenterology clinic, she was "always happy and chipper, and did not feel like anyone was harming her at all."  The mental status examinations of record reveal[ ] the claimant['s] hygiene and grooming [were] good [ ].  Further, the mental status examinations reflected the claimant presented within average limits of intellectual functioning, which suggest no cognitive impairment understanding or responding to supervisor feedback and adequately relating [to] co-workers.  Finally, the claimant's records and hearing testimony reflect she has a network of friends who support her emotionally and assist[ ] with claimant's temporary housing [ ].

Tr. 20-21.  This portion of the ALJ's Decision makes clear that the ALJ considered Ms. Etter's opinion, but found that the evidence in the record did not support her conclusion that Plaintiff's mental disability has the extreme implications on Plaintiff's life that Ms. Etter found it to have.

Plaintiff argues that "[a]lthough an opinion's 'inconsistency' with the underlying record is a facially valid reason for rejecting the opinion, when there are no 'obvious inconsistencies' between the opinion and the treatment records, the inconsistency finding

is not supported by substantial evidence and should be reversed." *Brief* [#12] at 17.  As Plaintiff concedes, consistency *with the record as a whole* is a legitimate basis for determining the weight to be afforded an opinion.  *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("In determining the weight to be given an opinion, the ALJ must consider the consistency between that opinion and the record as a whole."); *see also* 20 C.F.R. § 416.927 ("[W]e consider the following factors in deciding the weight we give to any medical opinion. . . . (4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").  Plaintiff appears to take this concept and limit it to consistency with "the treatment records," *Brief* [#12] at 17, however, that is not the standard.  Here, the ALJ very carefully analyzed the record as a whole and determined that Ms. Etter's opinion was inconsistent with Plaintiff's testimony and treatment records.  The Court finds that the ALJ's summary of Plaintiff's treatment records and testimony is accurate.  *See, e.g.*, Tr. 223 ("She told me that she was never angry there, she was always happy and chipper, and did not feel like anyone was harming her at all."); Tr. 296-97 (February 4, 2013 mental status examination summary); Tr. 298 ("Survivor; has network of friends who help her out . . . ").  Therefore, the Court finds that the ALJ's decision to afford little weight to Ms. Etter's conclusions was not error.  To the extent Plaintiff is asking the Court to draw its own conclusions about the record, that is not the Court's role.  *Hackett*, 395 F.3d at 1173.

Plaintiff also attacks the ALJ's assignment of little weight to Ms. Etter's conclusions because the ALJ noted that Ms. Etter "is not an 'acceptable medical source' and only 'acceptable medical sources' can give medical opinions . . . ." Tr. 20.  Pursuant to C.F.R. § 416.927(a)(1),

> Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

C.F.R. § 416.927(a)(1).   As a Licensed Clinical Social Worker, Ms. Etter is not an "acceptable medical source."   *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164-65 (10th Cir. 2012) (noting that a GAF score "assessed by a counselor" was not prepared by an "acceptable medical source" and finding that it was not an error for the ALJ assigned "only modest weight" to the counselor's GAF score assessment); *Harris v. Colvin*, No. 13-cv-01107-REB, 2014 WL 4472414, at *3-4 (D. Colo. Sept. 11, 2014); *see generally* SSR 06-03p, 2006 WL 2329939 (defining "acceptable medical sources" and noting that "[m]edical sources who are not "acceptable medical sources" include "licensed clinical social workers). While Plaintiff argues that the ALJ was required to evaluate Ms. Etter's opinion using the same criteria he would use to evaluate the opinion of an acceptable medical source, namely the factors discussed in C.F.R. § 416.927(c), *Brief* [#12] at 19, the ALJ appears to have done just that.

Medical opinions must be weighed as outlined in 20 C.F.R. § 416.927(c).   This provision requires an ALJ to consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.   20 C.F.R. §416.927(c).   Notably, the ALJ

need not discuss each individual factor. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Nevertheless, the ALJ must consider every factor in determining the weight to assign a medical opinion, and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotation marks, internal brackets, and citation omitted). Here, the ALJ very specifically noted that he found Ms. Etter's opinion to be inconsistent with the record. As discussed above, that is a legitimate reason for determining to give an opinion less weight.

Plaintiff also takes issue with the ALJ's consideration of the GAF[6] scores contained in Plaintiff's treatment records. *Brief* [#12] at 20-22. Plaintiff argues that while "GAF ratings, in and of themselves, are not an RFC finding . . . . they are clearly relevant evidence that an ALJ may not properly overlook or misrepresent." *Id.* at 21. Regarding the GAF scores in the record, the ALJ explained:

> The record reflects global assessment of functioning (GAF) scores ranging from 30 to 60 indicating behavior considerably influenced by delusions or hallucinations *or* serious impairment in communication or [judgment] (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) *or* inability to [function] in almost all areas (e.g., stays in bed all day, no job, home or friends) to moderate symptoms (e.g., occasional panic attacks) *or* moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers) [ ]. The undersigned affords some weight [to] the GAF scores as they appear to accurately reflect the claimant's

---

[6] "The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012). A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* (quotation omitted). A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* (quotation omitted).

symptom severity and level of functioning.   However, it is noted that the Commissioner[ ] has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings."  65 Fed. Reg. 50746, 50746-65 (2000).  Thus, although GAF scores can be helpful in an Administrative Law Judge's decision-making process, they are considered a snapshot of functioning at the time of examination not determinative of overall disability.

Tr. 20. (internal brackets omitted).   Plaintiff maintains that "the ALJ plainly misunderstands the import of a 'snapshot.'  One snapshot may only prove that a person was having 'a bad day' however, in this case, the record of GAF scores . . . offers numerous snapshots, which present a consistent picture of inability to function on a 'regular and continuous basis.'" *Brief* [#12] at 22.

The ALJ noted that he afforded "some weight" to the GAF scores, but properly explained that the GAF scores are "not determinative of overall disability."  Tr. 20; *see Luttrell v. Astrue*, 453 F.App'x 786, 792 n.4 (10th Cir. 2011) (unpublished) ("This court has repeatedly noted . . . that generalized GAF scores, which do not specify particular work-related limitations, may be helpful in arriving at an RFC but are not essential to the RFC's accuracy." (internal quotation marks and citations omitted)); *Lopez v. Barnhart*, 78 F.App'x 675, 678 (2003) (unpublished) ("Contrary to claimant's contention, a GAF score of 40 may indicate problems that do not necessarily relate to the ability to hold a job.  Thus, standing alone, the GAF score does not evidence an impairment seriously interfering with claimant's ability to work." (citations omitted)); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.").  The Court finds no error with the ALJ's assigned of "some weight" to the GAF scores in the record and his consideration of them

13

in the context of the overall record.  Plaintiff's argument that the ALJ may have overlooked or misrepresented the GAF scores, *Brief* [#12] at 21, lacks merit.

**B.    The Assignment of "Significant Weight" to Certain Conclusions Reached by the State Agency Psychologist**

On August 21, 2012, Dr. Frommelt, a nonexamining agency psychologist, reviewed Plaintiff's records as a result of Plaintiff's application for supplemental security income.  Tr. 62-73.  Dr. Frommelt reviewed Plaintiff's records, including a May 3, 2012 opinion from Ms. Etter.  Tr. 63-65, 68.  Dr. Frommelt applied the criteria of the Listings to her analysis of Plaintiff.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings); 20 C.F.R. § 416.925(a); Soc. Sec. Ruling 83-19, 1983 WL 31248, at *1 (SSA 1983).  Mental disorders are analyzed under § 12.00 of the Listings, which defines each of the nine diagnostic categories identified therein by three criteria: a statement describing the disorder (the "Capsule Definition"), a set of medical findings ("Paragraph A") and a set of impairment-related functional limitations ("Paragraph B").[7]  Alternative functional criteria ("Paragraph C") are included for certain classes of disorders.  A claimant's impairment meets or equals a listed impairment, and therefore is presumed to be disabling, if the diagnostic description of the Capsule Definition and the criteria of both Paragraphs A and B (or Paragraphs A and C, where appropriate) are satisfied.  *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00A. Considering the Paragraph B criteria for the mental conditions with which Plaintiff has been

---

[7]  Paragraph B requires proof that a medically determinable impairment has resulted "in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R., Pt. 404, Subpt. P., App. 1, § 12.04B.

diagnosed, Dr. Frommelt found that Plaintiff has (1) mild restriction of activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration.  Tr. 66.  As a result, Dr. Frommelt concluded that Plaintiff's impairments did not meet the Paragraph B criteria of the Listings because the records did not support a conclusion that Plaintiff had "marked" restrictions in any of the functional areas covered by Paragraph B.  Tr. 66.  Dr. Fommelt also concluded that the "[e]vidence does not establish the presence of the "C" criteria."  Tr. 66.

> The ALJ considered Dr. Frommelt's conclusions and
>
> afforded significant weight to the "paragraph B" conclusions and the mental residual functional capacity (RFC) conclusions reached by the psychologist employed by the state agency (DDS), which also support a finding of 'not disabled.'  Based on a review of the evidence of record, the DDS psychologist concluded that the claimant is no more than "moderately" limited in her mental ability to perform work-related tasks.  The DDS psychologist concluded that the claimant retains the abilit[y] to do work of limited complexity that would be learned in three (3) month[']s time and she could manage social interactions that are not frequent or prolonged [ ].  The DDS physician is an expert in disability evaluation, reviewed all the available evidence, and h[er] opinion is consistent with evidence of record.  For example, the mental status examinations of record indicate[ ] the claimant is of "average" intelligence and worked successfully with limited social interaction at a gastroenterologist office.  In addition, the claimant is capable of some activities of daily living and social interaction with friends despite reported panic attacks [ ].

Tr. 21.

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ and the Commissioner.  *Hackett*, 395 F.3d at 1173; *White*, 287 F.3d at 905, 908, 909.  However, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  *See Glenn*, 21 F.3d at 988 (explaining that the Court must affirm if, considering

the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).   Further, "[a]lthough the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'" *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

Notably, Dr. Frommelt, an agency psychologist, never met with Plaintiff.  Instead, her opinion was based only on a review of Plaintiff's treatment records and Ms. Etter's opinion.  "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(1), (2); 20 C.F.R. § 416.927(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2).   However, an ALJ "may not ignore these opinions and must explain the weight given to these opinions in their decisions," Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2, and may give weight to a non-examining, consulting doctor, like Dr. Frommelt, if he provides a "legally sufficient explanation for doing so."   *Id.*; *see also* 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").   Here, there was no treating physician and the ALJ explained that Dr. Frommelt's opinion "is consistent with the evidence of record."  Tr. 21.  Consistency with the record as a whole is

a legitimate basis for determining the weight to be afforded an opinion. *Pisciotta*, 500 F.3d at 1078 ("In determining the weight to be given an opinion, the ALJ must consider the consistency between that opinion and the record as a whole."). Further, the ALJ provided specific examples of portions of the record that support Dr. Frommelt's conclusions. Tr. 21. To the extent Plaintiff reviews the evidence Dr. Frommelt considered when reaching her conclusions and asks the Court to reach a different conclusion from the doctor, *Brief* [#12] at 27-29, that is not the Court's role.

> Plaintiff makes one additional attack on Dr. Frommelt's analysis. She argues that
>
> the Agency consultant only reviewed a partial record and, most importantly, was never given the opportunity to review the assessment of [Plaintiff's] treating source. An ALJ may not rely on an non-examining physician's RFC when the Agency RFC assessments, *completed almost a year prior to the hearing*, were not based on the full record.

*Brief* [#12] at 29 (emphasis in original). Plaintiff relies on a variety of nonbinding cases to support this argument. The main case on which she relies is *Frankl v. Shalala*, 47 F.3d 935 (8th Cir. 1995). In that case the Eighth Circuit found that because the RFC assessment forms completed by a nonexamining agency physician "were not based on the full record in this case," those forms "cannot constitute substantial evidence that[ the plaintiff] was capable of performing the full range of light work at the time of the hearing . . . ." *Id.* at 938. This nonbinding case was discussed by Senior District Judge Crow of the District of Kansas last year. He correctly explained that "*Frankl* does not establish a rule that medical opinions become stale after a year and lose their persuasive force. Instead the ALJ accepted the plaintiff's testimony that his condition had changed after the forms had been completed, and no contradictory medical evidence of the plaintiff's RFC at the time of the hearing was presented." *Lee v. Colvin*, No. 12-2559-SAC, 2013 WL 4549211, at *3 (D.

17

Kan. Aug. 28, 2013); *see also O'Bannon v. Colvin*, Civil No. 1:13-cv-207-DBH, 2014 WL 1767128, at *7 (D. Me. April 29, 2014).   Therefore, the question is not whether Dr. Frommelt's opinion was stale, but whether the treatment records that post-dated Dr. Frommelt's assessment would have changed the conclusions.

Dr. Frommelt examined the following information when reaching her conclusions: a May 3, 2012 opinion of Ms. Etter, Tr. 64, 67-68; a variety of documents provided by Plaintiff, Tr. 63-64; and treatment records completed by Plaintiff's therapists at Colorado West Mental Health dated October 20, 2011; February 6, 2012; March 22, 2012; and May 3, 2012, Tr. 65.   Plaintiff offers no argument that her condition deteriorated after May 3, 2012, the most recent of the records considered by Dr. Frommelt.   Further, the treatment records show only two counseling sessions that post-date the records reviewed by Dr. Frommelt.   Tr. 295-301.   The treatment notes from Plaintiff's July 15, 2012 counseling session does not note any changes in her condition.   Tr. 299-301.   In fact, the primary purpose of the appointment was to refer her to the Center for Mental Health in Delta County because she relocated to Cedaredge, Colorado.   Tr. 299.   Plaintiff's February 4, 2013 session with Ms. Etter was a "6 month assessment."   Tr. 295.   Ms. Etter noted that "Heather has been certified as a medical coder and would like to pursue aspirations for rejoining this career track while getting more school related to this area." Tr. 295.   She also wrote that "Heather is feeling safe in her current environment and has access to medical care."   Tr. 296.   In her "Diagnostic Formulation," Ms. Etter explained:

> This is Heather's 6 month assessment.   Heather is coping with many life stressors with an unintended pregnancy, homelessness, and the recent loss of her grandmother.   The father of the child cheated on her and was emotionally abusive.   Her life tends to be filled with chaos like her childhood.

18

Tr. 297.  The Mental Status Examination noted many "normal" and "fair" assessments.  Tr. 296-97.  The Risk Assessment portion of the treatment notes indicated that there was "no risk" of suicide, homicide [or] grave[ ] disab[ility]."  Tr. 297.  In addition, in her summary and recommendations, Ms. Etter noted:

> Emotional[ly] volatile at times; goes into rages; medical issues since birth; chaotic relationships; homelessness; no family support; borderline personality disorder; anxiety.
> Survivor; has network of friends who help her out; has a dog; is being positive about this pregnancy and making wise choice of adopting it out.

Tr. 298.  Nothing in these records indicates that Plaintiff's condition deteriorated in any way and that, as a result, Dr. Frommelt's opinion should not have been given any weight by the ALJ.  Therefore, the Court finds that the ALJ's assignment of "significant weight" to certain conclusions reached by Dr. Frommelt was not error.

## C.    The Mental RFC

Finally, Plaintiff argues that "the ALJ's mental RFC only addresses her social limitations" even though the ALJ found that Plaintiff has "significant limitations of her ability to concentrate, persist at tasks, and maintain pace . . . ."  *Brief* [#12] at 22-26.  With regard to concentration, persistence, or pace, the ALJ found that Plaintiff

> has *moderate* difficulties.  Deficiencies or limitations in concentration, persistence, or pace were assessed through a mental state exam (MSE). The mental status examinations of record reflect that the claimant's attention and concentration range from "normal" to distractible [ ].  However, the claimant's records and hearing testimony did not describe a history of problems with attention and concentration within the work environments. Further, the claimant displayed no indication of distraction during the evaluation.  Her treating source mental status examination noted normal speech and concentration, average intelligence, logical and goal-directed thought processes and no perceptual disturbances [ ].  Nonetheless, the undersigned find[s] that the claimant's concentration, persistence, and pace are likely to be moderately diminished due to distractibility associated with mental health symptoms and stress factors.

19

Tr. 13.  Ultimately, the ALJ found that Plaintiff "has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except no public contact work."  Tr. 14. Defendant admits that "there were no concentration, persistence, or pace limitations in Plaintiff's" RFC. *Response* [#13] at 14.  Defendant argues, however, that "the jobs identified by the [VE] were all unskilled" and that "the State agency psychologist opined that Plaintiff retained the [RFC] to perform the low end of semi-skilled work."  *Id.*  Defendant further maintains that "even though the [RFC] did not include any limitations on the ability to concentrate, Plaintiff cannot show that the ALJ's decision would have been different had the [RFC] included limitations on the ability to concentrate."  *Id.* at 15 (citing *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)).

The issue here is that Plaintiff believes that because the ALJ found a moderate impairment at step three of his assessment, he must explicitly discuss or state that impairment and an accommodation for that impairment in the RFC.  Plaintiff does not provide legal authority for this proposition and the applicable authority does not appear to include such a requirement.  The Social Security Administration ("SSA") has made clear that the "RFC assessment must be based on *all* of the relevant evidence in the case record . . . ."  SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996), however, it does not require the ALJ to explain the RFC in any particular way or to explicitly incorporate his findings at steps two and three into his written RFC at step four.  The SSA's policy states:

> The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

The Southern District of New York recently addressed this question in *Roman Jimenez v. Colvin*, No. 12 Civ. 6001(PGG)(FM), 2014 WL 572721 (SDNY Feb. 13, 2014). That court explained:

> Roman further objects that the RFC finding conflicts with the ALJ's determination at Step Three that she has "marked limitation in concentration, persistence, and pace" and "moderate difficulties" in social functioning. (Pl.'s Mem. at 13 (citing Tr. 17)). Determinations at Step Three, however, are different than those at Step Four. SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). As the ALJ noted, limitations identified at Step Three "are not [an RFC] assessment . . . . The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions." (*Id.* at 17-18 (citing SSR 96-8P)). In other words, identifying an impairment at Step Three—even a marked impairment—does not define the scope of residual functional capacity. *See, e.g., Anderson v. Colvin*, No. 12-1102, 2013 WL 1339379, at *6 (10th Cir. Apr. 4, 2013) ("the ALJ was not required to include any of [the doctor's] 'B criteria' opinions in his RFC assessment"). The ALJ properly performed the more detailed evaluation, considering and weighing the reports of the treating and evaluating professionals, as well as Roman's own testimony, and concluded that Roman had the RFC to perform [ ] light, unskilled work, limited by certain environmental factors. (Tr. 18). His prior determinations have no bearing on this finding.

*Id.* at *14. In addition, the Tenth Circuit recently held that the ALJ was not required to include a doctor's Paragraph B criteria opinions in his RFC assessment because the limitations identified in Paragraph B "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Anderson v. Colvin*, 514 F.App'x 756, 763 (10th Cir. 2013) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)). Therefore, the Court does not find support for Plaintiff's position and finds that the ALJ did not err by not explicitly noting a concentration, persistence, or pace limitation in his RFC.

## IV.  Conclusion

The record contains substantial evidence from which the ALJ concluded that Plaintiff

was not entitled to benefits under the Act during the time relevant to this case.  The ALJ's decision was based upon substantial evidence and is free of reversible legal error. Accordingly,

IT IS HEREBY **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

Dated:  November 24, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge